NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0034n.06

No. 18-1551

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 22, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ROBERT LAPCZYNSKI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| WALMART STORES, INC., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: DAUGHTREY, GIBBONS and GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** On a slushy, wintry day in Alpena, Michigan, 77 year-old Robert Lapcyznski walked through a wet parking lot and into Walmart. Just a few moments after walking through the front entrance, Lapczynski slipped and fell, fracturing his ankle. Lapczynski filed suit in state court, alleging that Walmart was negligent in its duty to maintain reasonably safe conditions for patrons. He argued that Walmart failed to warn adequately or to protect patrons from the risk of water collection on the store floor on a wet day. Walmart removed the case to federal court on the basis of diversity of citizenship jurisdiction and moved for summary judgment on two grounds: (1) Walmart did not have actual or constructive knowledge of the alleged wet floor; and (2) the risk of slipping on a wet floor was open and obvious. Citing the weather conditions, wet parking lot, saturated welcome mats, and orange warning cones, the district court granted summary judgment on the basis of Walmart's second argument and held that the risk of slipping on water in the pharmacy area was open and obvious to a reasonable person. Finding no genuine issue of material fact, the district court concluded that Walmart had no duty to

protect Lapczynski from a risk that was open and obvious. We agree with the district court and affirm its grant of summary judgment.

I.

On January 13, 2016, Lapczynski, a Michigan native, arrived at Walmart around 6:30 p.m. As is typical for a Michigan winter, it was a snowy, slushy day. In his deposition, Lapczynski did not recall whether it was snowing when he arrived but recounted that "it probably snowed during the day, which it always does." DE 15, MSJ, Lapczynski Tr., Page ID 90. He described the parking lot as "wet" with melting snow. *Id.* Lapczynski parked in the first or second row, walked through the lot, and into the store.

Upon entering the store, Lapczynski noticed two rugs saturated in water. In describing the first rug, he explained that "you could walk through it and it looked like a kid splashing in water." DE 15, MSJ, Lapczynski Tr., Page ID 90. The second rug was a bit less saturated, as only half of it had standing water. Lapczynski walked through the first rug, splashing as he went, and then tried to dry his shoes on the driest part of the second rug. He then turned right, and began walking toward the pharmacy, which is located right around the corner from the store entrance. When Lapczynski was within a few feet of the pharmacy counter, he "went down, just like a ton of bricks," fracturing his ankle. *Id.* at 88–91.

Lapczynski attributed his fall to water on the floor. Although he did not see any puddles, Lapczynski thought that it was likely, given the inclement weather, that customers tracked in slush from outside. He estimated that "hundreds of people" pass by that area, and that "people drug [sic] [water] in" on their shoes. DE 15, MSJ, Lapczynski Depo Tr., Page ID 92. Lapczynski did not know whether he tracked slush into the store but noted that his shoes were wet as he walked through the parking lot, and "especially" wet when he walked through the rugs at the entrance of

the store. Two Walmart employees testified that they interacted with Lapczynski immediately after the fall and observed that his shoes were wet.

At the time when Lapczynski entered Walmart, the store had taken precautions to warn customers of the potentially wet floors. Most significantly, it placed two orange caution cones, which said "CAUTION – WET FLOOR,"[1] in Lapczynski's path. The first cone was near the doorway at the store's entrance. Because it was partially obstructed by an advertisement and a crate, however, the cone would have been unlikely to catch a customer's attention unless he turned around and looked toward the doorway after entering. The second cone was near the pharmacy counter. It would have been viewable upon walking into the store, turning right, and rounding the pharmacy counter's corner, as Lapczynski did.

Walmart employee Joseph Bouchey further testified that because that day was "just a nasty day," the store took additional measures to alert customers of the possibility of water on the floor. DE15, MSJ, Bouchey Depo, Page ID 120–21. Walmart employees placed mats near the store entrance and dry mopped frequently to thwart water accumulation. Walmart employee, Angela Burns, recalled that she dry mopped any wet spots that she saw near the pharmacy about a half hour before Lapczynski's fall. Bouchey also noted that it is normal protocol to put fans and heaters out to dry up any water on the floor, but whether fans and heaters were actually present on the day in question is not discernable from the surveillance video and photos.

About a year after the incident, Lapczynski filed a complaint against Walmart in Michigan state court. The complaint included a single count of negligence, alleging that Walmart breached its "duty to maintain its premises in a reasonably safe condition for patrons and business invitees such as Plaintiff." DE 1-2, Compl., Page ID 7. Lapczynski contended that Walmart failed to take

---

[1] The surveillance video is too blurry to read the writing on the cones. But the cones do contain a written warning of some kind, and Walmart describes them as saying "CAUTION – WET FLOOR."

reasonable measures to inspect, eliminate, and warn patrons of water collection on the floor, and that Lapczynski suffered injury as a direct and proximate result of Walmart's alleged negligence. Lapczynski estimated the amount-in-controversy to be between $175,000 and $300,000.

In February 2017, Walmart removed the case to federal court on the basis of diversity of citizenship jurisdiction. The following November, Walmart moved for summary judgment. In its motion, Walmart contended that a jury could not find it liable for two reasons: (1) Walmart did not have actual or constructive knowledge of the alleged wet floor; and (2) the risk of slipping on a wet floor was open and obvious. Under either theory, Walmart argued, it owed Lapczynski no duty to guard against the potential slipping hazard.

In April 2018, the district court granted summary judgment and dismissed the case. Agreeing with Walmart's second grounds for dismissal, the court held that "the risk of slipping on water in the pharmacy area would have been open and obvious to a reasonable person" and that there was "no genuine issue of fact regarding whether the wet floor in Walmart was open and obvious." DE 27, Order, Page ID 301, 304.

On appeal, Lapczynski argues that the risk of slipping on water in Walmart was not open and obvious as a matter of law. He therefore contends that the district court should not have dismissed the case and that this court should reverse the district court's judgment.

II.

This court reviews a district court's grant of summary judgment *de novo*. *Sommer v. Davis*, 317 F.3d 686, 690 (6th Cir. 2003). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *El Camino Resources Ltd. v. Huntington Nat. Bank*, 712 F.3d 917, 922 (6th Cir. 2013). In considering a motion for summary judgment, this court considers "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits," and draws all reasonable inferences in favor of the nonmoving party. *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)). Where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, "[t]he central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Sommer v. Davis*, 317 F.3d 686, 690 (6th Cir. 2003) (internal citations omitted).

## III.

On appeal, Lapczynski argues that the district court erred in granting summary judgment for Walmart. Specifically, he argues that a reasonable juror could find that the bad weather, warning cones, and saturated mats did not make the water hazard open and obvious, and that the court improperly "took on the role of the jury" when it "weighed the facts together" and found that the risk of slipping on water was open and obvious as a matter of law. CA6 R. 12, Lapczynski Br., at 19. Thus, whether the district court erred in granting Walmart's motion for summary judgment turns on whether the risk of slipping on water in the store's pharmacy area was open and obvious under Michigan premises liability law. We conclude that it was, and that this case does not fall within the narrow "special aspects" exception that would warrant holding Walmart liable despite the danger being open and obvious. We therefore affirm the district court's grant of summary judgment in favor of Walmart.

A.

Lapczynski's complaint raises a single count of negligence under Michigan state law against Walmart, and Walmart removed to federal court on the basis of diversity of citizenship. Thus, this court applies the substantive law of Michigan and federal procedural law. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) ("Under the *Erie* doctrine, federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law.") (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In applying Michigan law, this court "must follow the decisions of the state's highest court when that court has addressed the relevant issue." *Savedoff v. Access Grp, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (quoting *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000)).

Under Michigan law, a prima facie case of premises liability requires the plaintiff to prove the following elements: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages. *Sanders v. Perfecting Church*, 303 Mich. App. 1, 4 (2013). The district court granted summary judgment on the grounds that Walmart had no duty to protect Lapczynski from a risk of slipping on water that was open and obvious.

B.

Under Michigan law, "a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land." *Hoffner v. Lanctoe*, 492 Mich. 450, 460 (2012). When the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware, the possessor must either protect or warn the invitee of the danger. *Id.* But Michigan law has carved an exception to this rule. Driven by the "overriding public policy of encouraging people to take reasonable care for

their own safety," Michigan law imposes "no duty to protect or warn of dangers that are open and obvious." *Id.* A danger is open and obvious when "it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id.* at 461. Thus, whether a condition is open and obvious "call[s] for an examination of 'the objective nature of the condition of the premises at issue.'" *Id.* (quoting *Lugo v. Ameritech Corp.*, 464 Mich. 512, 524 (2001)).

Since Michigan often has wintry weather conditions, there is robust precedent describing when such conditions present risks that are open and obvious. This court has noted that "[i]n Michigan, it is 'well established that wintry conditions, like any other condition on the premises, may be deemed open and obvious.'" *White v. Sunrise Senior Living Mgmt, Inc.*, 535 Fed. App'x 585, 486 (6th Cir. 2013) (per curiam) (quoting *Hoffner*, 492 Mich. at 464); *see also Hoffner*, 492 Mich. at 481 ("[T]he simple fact exists that the law compels individuals to accept personal responsibility for their well-being by avoiding apparent hazards, including those precipitated by Michigan winters."). Still, the Michigan Supreme Court has "rejected the prominently cited notion that ice and snow hazards are obvious to all." *Hoffner*, 492 Mich. at 463–64 (internal citations omitted). Therefore, ice and snow hazards do not render a condition open and obvious *per se*. *Id.* Instead, courts applying Michigan law must "ask whether the individual circumstances, including the surrounding conditions, render a snow or ice condition open and obvious such that a reasonably prudent person would foresee the danger." *Id.* at 464.

In wet or snowy weather, a wet floor can constitute an open or obvious condition, as a reasonable person might expect people coming in and out of the building to track water with them when they move. *Finazzo v. Speedway LLC*, No. 11-CV-14770, 2012 WL 3966371, at *2 (E.D. Mich. Sept. 11, 2012). This is especially true when there is a high amount of foot traffic. *Id.*; *see*

*also Labadie v. Walmart Stores, Inc.*, No. 325636, 2016 WL 1688922, at *3 (Mich. Ct. App. Apr. 26, 2016) (per curiam) ("It was reasonable to assume that, under [heavily rainy] weather conditions, water could accumulate in the entryway of the Walmart, particularly considering the store could have a high amount of foot traffic."); *Womack v. Walmart Stores, Inc.*, No. CV 14-12615, 2016 WL 1242438, at *2 (E.D. Mich. Mar. 30, 2016) ("A reasonable person . . . would have known that the entrance to the store might be wet since it had been raining."); *Sharp v. Art Van Furniture, Inc.*, No. 267810, 2006 WL 2270390, at *2 (Mich. Ct. App. Aug. 8, 2006) (per curiam) ("Water in a store entryway on a slushy January day in Michigan is a hazard analogous to that presented by ice and snow. . . . Reasonable minds could not disagree that a slippery surface in a store entryway should be expected under these conditions."); *Pingle v. Speedway LLC*, No. 13-13919, 2014 WL 4054978, at *5 (E.D. Mich. Aug. 15, 2014) ("[I]t is reasonably foreseeable that there would be liquid on the floor on a wet and cold January day."); *but cf. Bialick v. Megan Mary, Inc.*, 286 Mich. App. 359, 363–64 (2009) (per curiam) (finding that "drizzly or misty weather," in absence of any other indication of slippery floor, does not render wet floor condition open and obvious).

Courts applying Michigan premises liability law have also pointed to the presence of cones, mats, and warning signs, in conjunction with bad weather and foot traffic, to find the risk of slipping on a wet store floor open and obvious. *See Shah v. Bon Ton Dep't Stores, Inc.*, No. 10-000074-NO, 2011 WL 6793706, at *1 (Mich. Ct. App. Dec. 27, 2011) (per curiam) (finding wet floor condition open and obvious where there were four yellow warning cones just inside doors of store on rainy day); *Womack v. Walmart Stores, Inc.*, 2016 WL 12422438 at *2 (finding wet floor condition open and obvious where there was an orange caution sign warning of risk on a rainy day); *Pingel*, 2014 WL 4054978, at *4 (finding wet floor condition open and obvious where there

was "CAUTION: Wet Floor" sign at front of store on a rainy day and plaintiff fell in middle of store). One court has explained that "[t]he proper display of a wet floor sign makes the danger associated with a wet floor open and obvious as a matter of law, and is in fact why such signs are used." *Finazzo*, 2012 WL 3966371, at *3. Whether or not a plaintiff actually sees or understands the warning signs is irrelevant, as the open and obvious doctrine is an objective inquiry. Thus, that a plaintiff "[does] not see the sign is not relevant since the nature of the open and obvious doctrine asks not whether a risk was obvious to a particular plaintiff, but whether it is reasonable to expect that an average person with ordinary intelligence would have been able to discover it upon casual inspection." *Womack*, 2016 WL 1242438, at *2 (internal quotation marks and brackets omitted).

## C.

In this case, the risk of slipping on water in Walmart was open and obvious as a matter of law. Under the circumstances, a reasonable person in Lapczynski's shoes would have been aware of the risk of slipping on water on Walmart's tile floor. *See Hoffner*, 492 Mich. at 461. First, the parties do not dispute that the day in question was a wet and snowy day in Michigan. Lapczynski walked through a wet parking lot to reach the store. Lapczynski understood that customers can track snow and water in with their shoes and made an affirmative effort to try to dry his shoes on a mat in the store's doorway. While the Michigan Supreme Court has made it clear that bad weather does not render the risk of slipping open and obvious *per se*, *see Hoffner*, 492 Mich. at 463–64, a wet floor can constitute an open and obvious condition when a reasonably prudent person would foresee the danger. *Id.* at 462. Here, a reasonably prudent person would have foreseen the risk of slipping inside the store. And as Walmart is a large store that has a high volume of foot traffic, it is reasonable to expect that on a particularly wet day, customers track water inside on their shoes. *See Finazzo*, 2012 WL 3966371, at *2.

Nine seconds elapsed between the time Lapczynski walked through Walmart's double sliding doors and his fall. Although it might no longer be reasonable to expect slippery conditions had Lapczynski been in the middle of the store, far from the entryway, this was not the case. As established by surveillance video, Lapczynski took no more than a dozen steps between the doorway and falling. It was reasonable to expect that the area might be slippery given the wet weather conditions and high foot traffic.

Nevertheless, Lapczynski argues that this case is governed by *Bialick*, in which the court held that drizzly conditions, alone, do not render the risk of slipping on a wet floor open and obvious as a matter of law. 286 Mich. App. at 363–64. But the weather in this case was not "drizzly or misty;" rather, it was—by Lapczynski's own account—"wet," "snowy," and "slushy." *Id.* at 364; DE 15-23, MSJ, Lapczynski Depo Tr., Page ID 89–90. Hence, given the wet weather and parking lot, it would have been reasonable for a customer to expect the area approximately nine seconds from the doorway to be slippery, as it is foreseeable that customers track water in from outside.

Moreover, the parties do not dispute the presence of other warning signs that would have alerted a reasonable person to the possibility of wet floors near the pharmacy counter. For example, when Lapczynski first entered the doorway, he came across two mats, saturated in water. Lapczynski described the first rug as having so much water that "you could walk through it and it looked like a kid splashing in water." DE 15, MSJ, Lapczynski Tr., Page ID 90. Lapczynski walked through the completely saturated mat before attempting to wipe his shoes on a drier part of the second mat. Thus, given that he walked through a wet parking lot, and then "splashed" through a saturated rug before trying to dry his shoes off, a reasonably prudent person in Lapczynski's position would foresee the danger of slipping on water a few feet inside the store.

10

*See Hoffner*, 492 Mich. at 462. It seems unlikely that one would "[try] to dry [his shoes] off," DE 15-3, MSJ, Lapczynski Tr., Page ID 90, unless he could foresee a risk of slipping inside the store. And when a risk is such that a reasonably prudent person can foresee the danger, it is open and obvious. *Hoffner*, 492 Mich. at 462.

Further, the presence of caution cones suggests that the risk of slipping was open and obvious. *Finazzo*, 2012 WL 3966371, at *3. Here, the parties agree that there were at least two orange caution cones out when Lapczynski entered the store. Due to the placement of the first cone, they disagree about whether a reasonable person would have noticed it upon walking inside. But, even if we assume that the first cone was not visible to a reasonable person, the presence of the second cone was sufficient to make the risk of slipping open and obvious. *See id.* The second cone was bright orange, said "caution: wet floor," and was immediately viewable upon entering the store and turning right, as Lapczynski did. Lapczysnki contends, however, that the district court should not have granted summary judgment because "the cone was not visible to an individual entering the store until [he] turned the corner into the pharmacy." CA6 R. 12, Lapczysnki Br., at 16. But this contention fails to raise a genuine dispute of material fact. Even assuming the cone was not visible to patrons until rounding the corner, a reasonable person who entered the store amidst wet and slushy conditions, and saw an orange caution cone ahead, would reasonably foresee the danger of slipping on a wet floor.

Lapczynski also argues that "the location of the caution cone in the pharmacy would not indicate to a reasonable person that . . . the floor throughout the entire pharmacy might be wet." CA6 R. 12, Lapczynski Br., at 16. Again, Lapcyznski's contention, even if true, does not raise a genuine dispute of material fact sufficient to require resolution by a jury. To affirm the district court's grant of summary judgment, we do not have to find that the cone suggested that the entire

pharmacy might be wet, but rather that the place in which Lapczynski fell might have been wet. The cone's location, just a few feet ahead of where Lapczynski fell, indicated exactly that. *See Finazzo*, 2012 WL 3966371, at *3. And whether Lapczynski saw the sign and understood it is irrelevant, as the inquiry is objective. *Womack*, at *2.

The parties do not agree on every fact in the record. Indeed, there are some facts that remain unresolved or ambiguous: *inter alia*, whether the water was tracked in by Lapczynski or other customers, whether there were heaters or fans on, whether Lapczynski noticed the orange caution cones, and whether it was actually snowing or raining at the time of the fall. But to grant a motion for summary judgment, not every fact need be resolved. *Celotex*, at 323. Thus, even drawing all reasonable inferences in favor of Lapczynski, given that it was a wet, slushy day, that there were saturated mats at the front of the store, that Lapczynski used one of the mats specifically to try to wipe water off of his shoes, and that there was at least one plainly visible caution cone which a reasonable person would have noticed, the evidence is sufficient to find that the risk of slipping was open and obvious as a matter of law, and the remaining unresolved facts are immaterial.

## D.

Michigan law recognizes a narrow exception to the open and obvious danger doctrine. Under Michigan law, when there are "special aspects" that make an open and obvious risk unreasonably dangerous, a premises possessor has the duty to take reasonable steps to protect an invitee from that risk. *Hoffner*, 492 Mich. at 461; *Lugo*, 464 Mich. at 517. But the exception is exceedingly limited. It applies only when the condition "presents an extremely high risk of severe harm to an invitee" in circumstances where there is "no sensible reason for such an inordinate risk of severe harm to be presented." *Lugo*, 464 Mich. n. 2. Thus, the Michigan Supreme Court has

held, "the touchstone of the duty imposed on a premises owner being reasonableness, this narrow 'special aspects' exception recognizes that there could exist a condition that presents a risk of harm that is so unreasonably high that its presence is inexcusable, even in light of its open and obvious nature." *Hoffner*, 492 Mich. at 462. For example, "a commercial building with only one exit for the general public where the floor is covered with standing water" or "an unguarded thirty foot deep pit in the middle of a parking lot" would be unreasonably dangerous conditions. *Lugo*, 464 Mich. at 518.

Lapczynski's case does not fall into the special aspects exception to the open and obvious doctrine. The danger of slipping on water inside a store is hardly comparable to the danger of falling into a "thirty foot deep pit in the middle of a parking lot." And there is a "sensible reason" for the water hazard in Lapczynski's case: it was a slushy, wintry day in Michigan. Thus, because Lapzynski's case does not fall into the special aspects exception, we agree with the district court that the risk of slipping on water near Walmart's store entrance constituted an open and obvious danger for which Walmart did not owe a duty to protect its patrons.

E.

Walmart presents an alternative ground upon which to uphold its judgment: that Walmart did not have actual or constructive knowledge of the hazardous condition. This court may affirm a district court's grant of summary judgment on any ground supported by the record. *See Bennett v. Spear*, 520 U.S. 154, 166 (1997) (noting that a respondent is entitled "to defend the judgment on any ground supported by the record"); *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 592 (6th Cir. 2014). Because we affirm the district court's judgment under the open and obvious doctrine, we decline to consider Walmart's alternative theory.

IV.

For the reasons stated, we affirm the district court's grant of Walmart's motion for summary judgment under Fed. R. Civ. P. 56.